1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                    Plaintiff,<br><br>       v.<br><br>GREGORY P. BURLESON,<br><br>                                    Defendant. | Case No. 2:16-cr-00046-PAL-GMN<br><br>**ORDER**<br>**and**<br>**REPORT OF FINDINGS AND**<br>**RECOMMENDATION**<br><br>(Mot. Suppress – ECF Nos. 876, 982) |

Before the court are Defendant Gregory P. Burleson's ("Burleson") two motions to suppress, a Motion to Suppress Video Taped Interview (ECF No. 876) and Motion to Suppress Un-Mirandized Tape Recorded Interview of Defendant to Law Enforcement Agent that was a Product of Prior Unconstitutional Interrogation (ECF No. 982) which was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4 of the Local Rules of Practice. The court has considered the motion and Burleson's Motion to Seal (ECF No. 992), the government's Motions to Strike, or in the Alternative, Response in Opposition (ECF Nos. 926, 1071) with the Sealed Exhibit (ECF No. 1072), and the arguments of counsel at a hearing conducted December 13, 2016. Terrence Jackson appeared on behalf of Burleson, and Steven Myhre, Nicholas Dickinson, Nadia Ahmed and Erin Creegan appeared on behalf of the government.

## **BACKGROUND**

### I.      The Indictment

Defendant Burleson is charged in a Superseding Indictment (ECF No. 27) with 11 counts:

- Count One – Conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371. This charge arises from conduct that allegedly occurred sometime between March of 2014 and March 2, 2016.

- Count Two – Conspiracy to impede or injure a federal officer in violation of 18 U.S.C. § 372.  This charge arises from conduct that allegedly occurred sometime between March of 2014 and March 2, 2016.

- Count Three – Use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) and § 2.  This charge arises from conduct that allegedly occurred sometime between March of 2014 and March 2, 2016.

- Count Five – Assault on a federal officer in violation of 18 U.S.C. § 111(a)(1), (b) and§ 2.  This charge arises from conduct that allegedly occurred on April 12, 2014.

- Count Six – Use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) and § 2.  This charge arises from conduct that allegedly occurred on April 12, 2014.

- Count Eight – Threatening a federal law enforcement officer in violation of 18 U.S.C. § 115(a)(1)(B) and § 2.  This charge arises from conduct that allegedly occurred on April 12, 2014.

- Count Nine – Use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) and § 2.  This charge arises from conduct that allegedly occurred on April 12, 2014.

- Count Twelve – Obstruction of the due administration of justice in violation of 18 U.S.C. § 1503 and § 2.  This charge arises from conduct that allegedly occurred on April 12, 2014.

- Count Fourteen – Interference with interstate commerce by extortion in violation of 18 U.S.C. § 1951 and § 2.  This charge arises from conduct that allegedly on April 12, 2014.

- Count Fifteen – Use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) and § 2.  This charge arises from conduct that allegedly occurred on April 12, 2014.

- Count Sixteen – Interstate travel in aid of extortion in violation of 18 U.S.C. § 1952 and § 2.  This charge arises from conduct that allegedly occurred sometime between April 5, 2014 and April 12, 2016.

I.      **Burleson's Motions**

In the first motion, Burleson seeks to suppress a videotaped interview he gave to Longbow Production Companies on October 27, 2014.  He requests an evidentiary hearing to establish that this video was made while he was extremely intoxicated.  The motion argues that Burleson was not capable of knowingly or intelligently waiving his Fifth Amendment right to remain silent, his right to due process of law, and his Sixth Amendment right to counsel.  The motion argues that Burleson's statement to Longbow Productions, which was actually an undercover law enforcement operation, was improperly induced by law enforcement's use of alcohol intoxication which rendered his statements involuntary and unconstitutional.  An evidentiary hearing will conclusively establish that Burleson's statements were not the product of a rational intellect and

that he had been manipulated into making statements while government agents videotaped him. He had no legal advice or assistance during the process. The actions of the government agents were willful and outrageous misconduct that violated his Sixth Amendment rights and due process rights.

The court must assess the voluntariness of his statements under a totality of the circumstances test. Factors to be considered include the characteristics of the accused and the details of the interrogation. The totality of the circumstances in this case will establish that Burleson's admissions were involuntary, and therefore, inadmissible in evidence.

The second motion to suppress involves a tape-recorded telephonic interview Burleson gave to an FBI Special Agent. The motion argues that the Special Agent initiated the phone call to Burleson and induced him to go into a rambling narrative statement concerning the Bundy ranch standoff. During this rambling narrative, Burleson gave narrative statements similar to the unconstitutional admissions he made to agents posing as the Longbow Production Company four months earlier. In his second interview, Burleson bragged about his actions at the Bundy ranch, and made several incriminating and prejudicial statements. Counsel for Burleson claims these statements to the FBI agent were the direct product of the earlier unconstitutional admissions he made to Longbow agents. His statements should therefore be suppressed as the fruit of the poisonous tree.

**II.     The Government's Responses**

The government filed responses to both motions arguing they were both untimely pursuant to the court's Case Management Order (ECF No. 321). Pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure,[1] if a party does not meet the deadline for filing a Rule 12(b)(3) motion, the motion is untimely and may only be considered if the party shows good cause. Burleson has not shown good cause for filing both of his untimely motions.

On the merits, the government argues Burleson's videotaped admissions were freely and knowingly made and should not be suppressed. The government contends that the motion lacks legal and factual support for Burleson's claim that undercover agents took extraordinary efforts to

---

[1] All references to a "Rule" or the "Rules" in this order refer to the Federal Rules of Criminal Procedure.

ply him with copious amounts of alcohol before interviewing him on videotape.   Burleson's unsupported arguments that an evidentiary hearing will conclusively establish that his statements were not the product of a rational intellect and that he was manipulated into giving the statements on tape are insufficient to warrant an evidentiary hearing, and inconsistent with the facts alleged in the motion.

In this case, there was no interrogation process.   Burleson voluntarily met and spoke with undercover agents posing as documentary filmmakers in a hotel room under circumstances designed to make Burleson believe that he was participating in the documentary by recounting his experiences at the April 12, 2014 assault.

The government does not dispute that Burleson was offered and consumed alcohol before the start of, and at the conclusion of, the interview.   However, this fact alone does not establish that Burleson's statements were anything other than coherent, freely-given responses to the questions posed.   A defendant's intoxication alone does not necessarily render a statement involuntary.   The test for a voluntary statement is whether his will was overborne or whether the statement was freely made.   Burleson cannot establish any coercive police activity was used to elicit the statements he gave to the undercover officers posing as a documentary film crew, or that officers prevented Burleson from walking away from the conversation at any time.

The government also opposes the second motion to suppress statements Burleson gave in a lengthy tape-recorded telephonic interview with an FBI Special Agent.   The government first argues that the motion is untimely as it was filed six weeks after the court's deadline for filing Rule 12(b) motions.   The motion does not contain the certification required under LCR 12-1 that the motion is timely, and Burleson has not shown good cause why it should be considered weeks after the pretrial motions deadlines.

On the merits, the government argues that a statement is voluntary when it is the product of a rational intellect and free will.   The court applies a totality of the circumstances test to determine whether a confession is voluntary.   The Supreme Court has determined that coercive police activity is a necessary predicate to a finding that a confession is not voluntary.   In this case, Burleson has not made a preliminary showing that his statements to the FBI agent were improperly

coerced or otherwise involuntary.  The government's response provided the court with sealed Exhibits A and B, the recording of Burleson's January 15, 2015 call with the FBI agent, and October 2014 video recorded interview with undercover officers posing as members of a documentary film crew called Longbow Productions.

The government argues that the FBI agent was well-known to Burleson who, according to Burleson, had a trusting relationship with him.  It was Burleson, not the agent, who initiated the contact with the agent.  Burleson called the agent after a local law enforcement officer had contact with Burleson during an unrelated traffic stop.  Burleson told the officer who stopped him that the officer should call the FBI agent about him.  Burleson later reached out to the FBI agent and left a voicemail message for him.  The FBI agent returned the call and, without prompting, Burleson raised the issue of his involvement in the events of April 2014, telling the agent he believed he was on a terrorism watch list.

The government disputes that Burleson's statements to the special agent are the fruit of the poisonous tree because they were elicited as a result of statements made to undercover officers posing as documentary filmmakers in October 2014.  The motion does not provide any link between the statements Burleson made to undercover agents in October 2014, and those he made to an FBI agent he knew in January 2015.  However, even if he could establish such a link, Burleson's October 2014 statements to undercover agents were voluntary.  The video and audio recordings of the October 2014 interaction between Burleson and the undercover agents show that none of his statements were induced or rendered involuntary because he consumed alcohol.  More importantly, Burleson cannot establish that any coercive police activity was used to elicit his statements during the undercover operation.  Burleson was always able to terminate the undercover interview at any time.  Burleson cannot show any coercive law enforcement activity, which is a necessary predicate to a finding that his confession was not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment.  Finally, any alleged coercion "would have been long since attenuated by January 2015, when Burleson initiated a call to the agent based on an unrelated incident, *i.e.*, a traffic stop by a local law enforcement officer."

/ / /

**DISCUSSION**

As an initial matter, the government correctly points out that these two motions to suppress were not timely filed and that Burleson has not established good cause for filing them late. However, as they raise constitutional issues, the court will exercise its discretion to decide the motions on the merits.

**I.      Applicable Legal Standards**

**A.  Request for Evidentiary Hearing**

In *United States v. Howell*, 231 F.3d 615 (9th Cir. 2000), the Ninth Circuit held that a court must hold an evidentiary hearing if the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the court to conclude that relief must be granted if the facts alleged are proved. *Id*. at 620 (citing *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986); *United States v. Irwin*, 613 F.2d 1182, 1187 (9th Cir. 1980); *United States v. Carrion*, 463 F.2d 704, 706 (9th Cir. 1972)).   The court need not hold a hearing on defendant's pre-trial motion "merely because a defendant wants one.  Rather, the defendant must demonstrate that a significant disputed factual issue exists such that a hearing is required."  *Howell*, 231 F.3d at 621 (internal citation omitted).  The determination of whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court.  *United States v. Santora*, 600 F.2d 1317, 1320 (9th Cir.), *amended by* 609 F.2d 433 (1979).

Burleson's two motions are not supported by an affidavit or offer of proof, and the motions do not allege facts which warrant an evidentiary hearing.  At most, the motions claim that an evidentiary hearing will show that Burleson's interview with undercover officers posing as Longbow Production documentary film crew members plied  him with alcohol rendering him "grossly intoxicated."  The motion does not assert how much Burleson claims he had to drink, or when he drank it.  Moreover, his entire contact with undercover officers posing as Longbow Production Company crew members was videotaped, and the video belies his unsupported claims he was plied with alcohol by the agents or grossly intoxicated.  The court will therefore deny his request for an evidentiary hearing.

/ / /

## B. Admissibility of Burleson's Statements

A statement must be voluntary to be admissible, and the government has the burden of proving, by a preponderance of the evidence, whether a confession is voluntary. *Lego v. Twomey*, 404 U.S. 477, 489 (1972). If law enforcement conducts a custodial interrogation, the government must also establish, by a preponderance of the evidence, that a defendant waived his *Miranda* protections against self-incrimination. *Colorado v. Connelly*, 479 U.S. 157, 158 (1986).

During oral argument at the hearing on December 13, 2016, counsel for Burleson conceded that *Miranda* warnings were not required because Burleson was not in custody or subjected to custodial interrogation when he gave his video recorded statement to undercover officers posing as a documentary film crew. Counsel also conceded *Miranda* warnings were not required before his recorded statement to the FBI agent because Burleson was not in custody or subjected to custodial interrogation over the phone. Counsel also conceded Burleson initiated the telephone call to the FBI agent by leaving a message for him to return Burleson's call, and the FBI agent returned the call several days later. Counsel stated he filed the motions to suppress both statements to preserve his arguments that the video recorded statement was involuntary because Burleson was "grossly intoxicated", and that the telephone statement to the FBI agent was the fruit of his earlier involuntary video recorded statement. Counsel argued that the FBI agent was "obviously aware" of Burleson's video statement to undercover officers, and used information obtained from the video recorded statements to elicit further admissions constituting elements of the offenses for which Burleson is currently charged.

A voluntary statement is "one that is the product of a rational intellect and a free will." *Brown v. Horell*, 644 F.3d 969, 979 (9th Cir. 2011) (quoting *Medeiros v. Shimoda*, 889 F.2d 819, 823 (9th Cir. 1989)); *see also Blackburn v. Alabama*, 361 U.S. 199, 208 (1960)). The government bears burden of showing a confession is voluntary, *J.D.B. v. N. Carolina*, 564 U.S. 261, 269 (2011), and must do so by a preponderance of the evidence. *United States v. Jenkins*, 958 F.2d 934, 937 (9th Cir. 1991) (citing *Lego*, 404 U.S. at 489). In evaluating voluntariness, the test is whether "the government obtained the statement by physical or psychological coercion or by improper inducement," *United States v. Male Juvenile*, 280 F.3d 1008, 1022 (9th Cir. 2002)

1    (citation omitted), such that the "defendant's will was overborne" by the surrounding

2    circumstances. *United States v. Preston*, 751 F.3d 1008, 1016 (9th Cir. 2014) (en banc) (quoting

3    *Dickerson v. United States*, 530 U.S. 428, 434 (2000)).   This is an "inquiry that 'takes into

4    consideration the totality of all the surrounding circumstances—*both* the characteristics of the

5    accused *and* the details of the interrogation'." *Preston*, 751 F.3d at 1016 (quoting *Dickerson*, 530

6    U.S. at 434) (emphasis in original).   "It is not sufficient for a court to consider the circumstances

7    in isolation." *Doody v. Ryan*, 649 F.3d 986, 1008 (9th Cir. 2011) (en banc).

8         Coercive police activity is a necessary predicate to a finding that a confession is not

9    voluntary. *Brown*, 644 F.3d at 979; *see also Connelly*, 479 U.S. at 164 (providing examples of

10   police overreaching, including lengthy questioning, deprivation of food or sleep, physical threats

11   of harm, and forms of psychological persuasion).   "Coercive police activity can be the result of

12   either physical intimidation or psychological pressure." *Brown*, 644 F.3d at 979 (internal citation

13   omitted).   "The factors to be considered include the degree of police coercion; the length, location

14   and continuity of the interrogation; and the defendant's maturity, education, physical condition,

15   mental health, and age."   *Id.* (citing *Withrow v. Williams*, 507 U.S. 680, 693–94 (1993);

16   *Yarborough v. Alvarado*, 541 U.S. 652, 668 (2004)).

17        Cases finding coercive police conduct have been manifestly outrageous. *See, e.g., Mincey*

18   *v. Arizona*, 437 U.S. 385, 398–99 (1978) (finding statement obtained from a defendant who was

19   in the hospital, in near coma condition, and in great pain, while fastened to tubes, needles, and a

20   breathing apparatus, could not have been voluntary); *Haynes*, 373 U.S. 503, 511–12 (1963)

21   (invalidating confession where suspect was held for over five days and never advised of his rights);

22   *Ashcraft v. Tennessee*, 322 U.S. 143, 149–54 (1944) (invalidating confession because police

23   questioned suspect for thirty-six hours straight); *Henry v. Kernan*, 197 F.3d 1021, 1028 (9th Cir.

24   1999) (finding confession was involuntary because detectives admittedly continued the

25   interrogation after the suspect clearly invoked his *Miranda* rights); *California Attorneys for*

26   *Criminal Justice v. Butts*, 195 F.3d 1039, 1046 (9th Cir. 1999) (finding coercive interrogation

27   because the police disregarded the suspect's *Miranda* rights); *United States v. Tingle*, 658 F.2d

28   1332, 1335–36 (9th Cir. 1981) (finding confession involuntary when officer recited a litany of

maximum penalties for the suspect's alleged crimes, expressly stated that the suspect would not see her child "for a while, and warned the suspect that if she failed to cooperate he would inform the prosecutor that she was "stubborn or hard-headed").

A statement "may not be admitted if because of mental illness, drugs, or intoxication, the statement was not the product of a rational intellect." *United States v. Kelley*, 953 F.2d 562, 564 (9th Cir. 1992) (confession was voluntary despite defendant suffering heroin withdrawal, shaking and trembling, and telling agents they needed to hurry if they wanted to continue the interrogation). However, a statement is not involuntary simply because the defendant suffers from a mental illness or is intoxicated. *See, e.g.*, *United States v. Heller*, 551 F.3d 1108, 1112–13 (9th Cir. 2009) (confession voluntary although defendant ingested 7.5 mg of Tylenol III with codeine which made him tired and caused his hands to shake uncontrollably).; *United States v. Rodriguez-Rodriguez*, 364 F.3d 1142, 1146 (9th Cir. 2004), *amended on other grounds by* 393 F.3d 849 (9th Cir. 2005) (confession voluntary despite defendant's heroin withdrawal because defendant was alert, coherent, and oriented); *United States v. Banks* 282 F.3d 699, 706 (9th Cir. 2002) (holding a confession made in a drug or alcohol-induced state is voluntary if it remains "the product of a rational intellect and a free will."); *United States v. Coleman*, 208 F.3d 786, 791 (9th Cir. 2000) (defendant's symptoms of heroin withdrawal, including lethargy and physical discomfort, did not render his statements involuntary); *Medeiros*, 889 F.2d at 823 (confession voluntary because defendant's intoxication did not overcome his free will; defendant was able to drive, obey officers' instructions, and was cooperative in talking with them); *United States v. Martin*, 781 F.2d 671, 674 (9th Cir. 1985) (type, dosage, and schedule of painkilling narcotic administered to defendant was insufficient to overbear defendant's will to resist questioning or impair his rational faculties).

"The sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion." *Connelly*, 479 U.S. at 170 (citing *United States v. Washington*, 431 U.S. 181, 187 (1977)). Thus, a "defendant's mental condition, *by itself and apart from its relation to official coercion*" is not dispositive of "the inquiry into constitutional voluntariness." *Preston*, 751 F.3d at 1019 (quoting *Connelly*, 479 U.S. at 164) (emphasis in original) (internal quotation marks omitted); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). In the absence of

coercion, mental and emotional instability do not render inadmissible an intelligible and alert individual's voluntary statements.  *Preston*, 751 F.3d at 1019 (quoting *Connelly*, 479 U.S. at 164) (discussing *Connelly*'s affirmance that although the accused's state of mind is a factor in assessing the voluntariness of his responses, it is not in and of itself determinative).

Burleson does not claim that undercover officers posing as members of a documentary film crew, or the FBI agent who returned his call engaged in any coercive police conduct.  The court has carefully reviewed the entirety of the October 2014 video recorded statement Burleson gave to undercover officers posing as a documentary film crew.  The video is approximately an hour and forty-five minutes long, and both the audio and visual components are high quality.  The court has also listened to the recorded telephone conversation Burleson had with an FBI agent in January 2015 after Burleson left a message for the agent to return his call.  The recorded telephone conversation is a little over an hour and eight minutes in duration and also of high quality.

Here, Burleson does not claim that he was subjected to physical intimidation of any kind or threatened in any way.  Rather, he claims that undercover officers posing as a documentary film crew plied him with alcohol, knowing he had an alcohol problem, because law enforcement was aware he had a recent DUI arrest.  The motion claims that during his interview with undercover officers, he was "grossly intoxicated."  His motion is not supported by an affidavit or offer of proof describing how much alcohol he claims he consumed.  The motion also does not indicate Burleson would testify at an evidentiary hearing that he was grossly intoxicated or that his will was overborne.  The videotaped interview shows he was offered something to drink before the interview began.  He asked for a Coke.  One of the undercover officers asked if he would like a Crown Royal or some other type of bourbon with the Coke, and Burleson responded he'd "take a shot."  He was handed a plastic cup.  The undercover officer then spent several minutes explaining how the interview would be conducted, telling Burleson he wanted Burleson to expand on his answers using his own words.  The interviewer told Burleson that if he wanted to take a break at any time, he should finish his thought first, and a break would be taken any time Burleson needed anything.  Burleson responded with words to the effect "speaking of which, I'll take another shot."  A plastic cup was given to him and he was asked not to rattle the ice while filming occurred.  No other alcohol was offered or given to Burleson during the interview itself.

The videotape simply does not support Burleson's claim that he was intoxicated, let alone "grossly intoxicated" at any point. The video depicts a person who was alert and oriented. His speech was clear and coherent. He did not slur his words. He did not hesitate in responding, appear to have any difficulty concentrating or giving responsive answers to questions. There is no indication on the videotaped interview that Burleson had any difficulty with his balance. He got off and on a high-stooled chair, and moved normally from standing to sitting positions. After the interview concluded, Burleson got up off of the chair, assisted with removing the microphone, and moved into the next room where he continued to converse with undercover officers for a period of time.

In short, the record simply does not support Burleson's claim that he was physically or mentally impaired, or "grossly intoxicated" at any point during the interview. The video depicts a person who was eager to talk about the events at the Bundy ranch, and to outline his own involvement and motivation. In fact, at one point during the interview Burleson made admissions about why he went to the site, prefacing his remarks with "I know this is on tape, but I went there to…" (The court will not relate the content of Burleson's admissions as it is not necessary to do so to decide these motions.) Similarly, there is no support in the record for the claim made in the motion that law enforcement was aware, prior to the videotaped interview in October 2014, that Burleson had a problem with alcohol, or had been arrested for DUI.

With respect to the January 2015 recorded telephonic conversation Burleson had with an FBI special agent, it is undisputed that Burleson initiated the call. Burleson left a message for the agent to return his call. The agent returned the call several days later apologizing for the delay in getting back to him, and telling Burleson that he had been out of town. The tape-recorded interview makes it clear that Burleson was eager to discuss his involvement at the Bundy ranch as well as a number of other matters including his recent contact with a local law enforcement officer arising out of his DUI arrest. Nothing in the record supports the claim made in the motion that the special agent was aware of Burleson's video statement to undercover officers in October 2014, and used what Burleson said to further implicate him in crimes arising out of the standoff at the Bundy ranch. However, even if the special agent was aware of Burleson's statements to the

undercover officers, the tape-recorded interview clearly shows that Burleson's statements were voluntary.

For these reasons,

**IT IS ORDERED** that:

1.  Burleson's Motion to Seal (ECF No. 992) is **GRANTED**.

2.  The Government's Motions to Strike (ECF Nos. 926, 1071) are **DENIED**.

**IT IS RECOMMENDED** that Burleson's:

1.  Motion to Suppress Video Taped Interview (ECF No. 876) be **DENIED**.

2.  Motion to Suppress Un-Mirandized Tape Recorded Interview of Defendant to Law Enforcement Agent that was a Product of Prior Unconstitutional Interrogation (ECF No. 982) be **DENIED**.

DATED this 11th day of January, 2017.


PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE