UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

UNITED STATES OF AMERICA, )
            Plaintiff, )    Case No.: 2:16-cr-00046-GMN-NJK-16
  vs. )
             )    **ORDER**
GREGORY P. BURLESON, )
             )
           Defendant. )
             )
             )

Pending before the Court is Defendant Gregory Burleson's ("Defendant's") Motion for Sentence Reduction,[1] (ECF No. 3541). The Government filed a Response, (ECF No. 3529), to which Defendant filed a Reply, (ECF No. 3536).

Also pending before the Court is Defendant's Renewed Motion for Compassionate Release, (ECF No. 3570). The Government filed a Response, (ECF No. 3571), to which Defendant filed a Reply, (ECF No. 3572).

For the reasons discussed below, the Court **GRANTS** the Motion for Sentence Reduction and **DENIES** the Renewed Motion for Compassionate Release.

**I.    BACKGROUND**

At the conclusion of Defendant's trial, the jury found Defendant guilty of seven counts: Count Five, Assault on a Federal Officer; Count Six, Use and Carry of a Firearm During and in Relation to a Crime of Violence; Count Eight, Threatening a Federal Officer; Count Nine, Use

---

[1] This Motion was originally filed as an Emergency Motion for Modification of Sentence and Compassionate Release. (ECF No. 3522). The Court bifurcated this Motion into separate Motions for Sentence Reduction and Compassionate Release. (*See generally* Min. Order, ECF No. 3540). The Government's Response, (ECF No. 3529), addressed both of Defendant's Motions. On June 14, 2021, the Court denied Defendant's bifurcated Motion for Compassionate Release. (*See generally* Order, ECF No. 3542). The Court did not address Defendant's Motion for Sentence Reduction in its Order. (*Id.*).

and Carry of a Firearm During and in Relation to a Crime of Violence; Count Twelve, Obstruction of the Due Administration of Justice; Count Fourteen, Interference with Interstate Commerce by Extortion; Count Fifteen, Use and Carry of a Firearm During and in Relation to a Crime of Violence; and Count Sixteen, Interstate Travel in Aid of Extortion. (Jury Verdict, ECF No. 1903).  Defendant was sentenced to 819 months imprisonment and is currently incarcerated at United States Penitentiary, Coleman II ("USP Coleman II"), in Florida. (J., ECF No. 2220); (Renewed Mot. Comp. Rel. ("RMCR") 5:17–26, ECF No. 3570).

On January 29, 2021, Defendant filed a Motion for Sentence Reduction and Compassionate Release under the First Step Act ("FSA"). (*See generally* Mot. Sentence Reduction and Compassionate Release, ECF No. 3522).  On June 10, 2021, the Court bifurcated Defendant's Motion into separate motions for Sentence Reduction and Compassionate Release. (*See generally* Min. Order, ECF No. 3540).  On June 14, 2021, the Court denied Defendant's Motion for Compassionate Release. (*See generally* Order, ECF No. 3542).  On September 16, 2022, Defendant filed the present Renewed Motion for Compassionate Release (*See generally* Renewed Mot. Comp. Rel. ("RMCR"), ECF No. 3570). The Court discusses Defendant's Motion for Sentence Reduction and Renewed Motion for Compassionate Release below.

II.     **LEGAL STANDARD**

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances.").  Those limited circumstances include compassionate release in extraordinary circumstances. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020).  Prior to the enactment of the FSA, motions for compassionate release could only be filed by the Bureau of Prisons. 18 U.S.C. §

3582(c)(1)(A) (2002).  Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a sentencing court may order compassionate release if, "after considering the factors set forth in 18 U.S.C. § 3553(a)," the defendant has demonstrated: (1) he has exhausted his administrative remedies; and (2) "extraordinary and compelling reasons" warrant a reduction in his sentence. 18 U.S.C. § 3582(c)(1)(A).

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sent'g Comm'n 2018);[2] *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1997 (E.D. Wash. 2020) (noting that many courts have relied on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though the policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions).  However, the Ninth Circuit has held "that the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021).  "In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Id*. The Ninth Circuit clarified that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a

---

[2] According to U.S.S.G. § 1B1.13(2), to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).  However, as the Ninth Circuit has clarified, "[t]his dangerousness finding is not statutorily required under 18 U.S.C. § 3582(c)(1)(A)(i), but [it] is part of the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13(2)." *United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021).

defendant, but they are not binding." *Id*. (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

In so holding, the Ninth Circuit joined the five other circuits who have addressed this issue and have unanimously held "that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A) motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a defendant." *Id.*; *see, e.g.*, *United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020); *Gunn*, 980 F.3d at 1181; *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021). It is now settled that "[i]n the absence of an applicable policy statement from the Sentencing Commission, the determination of what constitutes extraordinary and compelling reasons for sentence reduction lies squarely within the district court's discretion." *United States v. Chen*, 48 F.4th 1092, 1095 (9th Cir. 2022).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district courts to have done so agree that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

///
///
///
///

### III. DISCUSSION

Although Defendant's Motion for Sentence Reduction and Motion for Compassionate Release require examination of the same factors, the two Motions seek distinct remedies. Through the former, Defendant requests a reduction of his sentence from 819 months to 387 months primarily due to changes in federal laws and sentencing guidelines. (*See generally* Mot. Sentence Reduction ("MSR"), ECF No. 3541). Through the latter, Defendant seeks compassionate release through "reduc[ing] his sentence to time served and requir[ing] him to serve his three years of supervised release in home confinement under strict supervision." (RMCR 23:15–17).

In analyzing whether a defendant is entitled to a sentence reduction or compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the Court must determine whether the defendant has satisfied three requirements. First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." Further, prior to reducing a sentence, U.S.S.G. § 1B1.13 directs courts to determine whether the defendant is a danger to the safety of any other person in the community. *Id.*

The parties do not dispute that Defendant properly exhausted his administrative remedies. (MSR 4:7–13); (Gov.'s Resp. MSR 8:20–24, ECF No. 3529). Therefore, the Court's discussion will be limited to whether Defendant has presented "extraordinary and compelling" reasons justifying a sentence reduction or compassionate release, as well as an assessment of the § 3553(a) factors.

///

### A. Extraordinary and Compelling Reasons

Broadly speaking, Defendant's reasons can be grouped into two categories: (1) the disparity between the sentence he received and the sentence he would likely receive under present sentencing law; and (2) his increased risk of COVID-19 related health complications due to his medical conditions.[3] (Reply RMCR 2:3–4:14, ECF No. 3572); (RMCR 7:17–22:18); (MSR 4:17–19:18). The Court will discuss each in turn.

#### 1. Sentencing Disparity Following Passage of the FSA

As stated, Defendant argues that the disparity between the sentence he received and the sentence a court would likely impose under current sentencing law constitutes an extraordinary and compelling reason warranting a sentence reduction and compassionate release. (RMCR 7:17–12:22); (MSR 4:17–9:22). In rebuttal, the Government contends that changes to sentencing law, standing alone, do not constitute extraordinary and compelling reasons justifying a sentence reduction. (Gov.'s Resp. RMCR 2:3–17, ECF No. 3571).

Prior to the First Step Act ("FSA"), prosecutors could "stack" multiple counts of § 924(c) firearm violations, which resulted in defendants without previous convictions being charged for both a first offense—carrying a five-year mandatory minimum—and a "second or subsequent offense"—carrying a mandatory twenty- or twenty-five-year sentence, to be served consequently—in the same indictment. *United States v. Jones*, 482 F. Supp. 3d 969, 978 (N.D. Cal. 2020) (citing *Deal v. United States*, 508 U.S. 129, 132 (1993)). Thus, someone convicted of two § 924(c) counts in a single offense automatically faced a minimum sentence of twenty-five to thirty years.

---

[3] Defendant additionally argues that threats to his personal safety constitute an "extraordinary and compelling" reason warranting compassionate release. Specifically, Defendant asserts that his "life has been threatened multiple times" and he is unable to protect himself due to his medical conditions. (Reply RMCR 4:4–14). However, "[a]n inmate's reasonable fear of assault by other inmates in the BOP is not an extraordinary or compelling reasons for compassionate release under 18 U.S.C. § 3582(c)(1)(A)." *United States v. Tate*, No. 3:16-cr-74, 2022 WL 827256, at *2 (W.D.N.C. Mar. 18, 2022); *see United States v. Stewart*, No. 02-cr-62, 2022 WL 4094128, at *3 (D. Del. Sept. 7, 2022) (same).

In 2018, Congress enacted the FSA. Section 403(a) of the FSA revised § 924(c) by eliminating the twenty-five-year stacking provision for a "second or subsequent count of conviction" under § 924(c). Instead, the twenty-five-year mandatory-minimum sentence applies only on a second § 924(c) conviction if the defendant has a prior § 924(c) conviction that has become final.

The FSA did not make § 403(a) retroactive. *See* FSA § 403(b); *United States v. Davis*, 139 S. Ct. 2319, 2324 n.1 (2019) ("In 2018, Congress changed the law so that, going forward, only a second § 924(c) violation committed after a prior [§ 924(c)] conviction has become final will trigger the 25-year minimum." (quotation marks omitted)). However, in *United States v. Chen*, the Ninth Circuit held that "district courts may consider non-retroactive changes in sentencing law, in combination with other factors particular to the individual defendant, when analyzing extraordinary and compelling reasons for purposes of § 3582(c)(1)(A)." 48 F.4th 1092, 1098 (9th Cir. 2022). The *Chen* court further articulated that "[t]here is no textual basis for precluding district courts from considering non-retroactive changes in sentencing law when determining what is extraordinary and compelling." *Id*. Accordingly, pursuant to *Chen*, this Court must consider the changes in sentencing law to determine whether "extraordinary and compelling" purposes exist.

As stated above, Defendant was found guilty of three counts of "Use and Carry of a Firearm During and in Relation to a Crime of Violence," in violation of 18 U.S.C. § 924(c), and sentenced to 819 months (sixty-eight years) imprisonment. (*See generally* J.). The sentence Defendant received was largely attributable to the then permissible practice of "stacking" § 924(c) charges in the same indictment without a previous § 924(c) conviction. If Defendant was sentenced today, he would only receive a 387 months (thirty-two years) sentence.

Here, the disparity between the sentence Defendant received and the sentence he would have received after passage of the FSA is significant. *See United States v. McPherson*, 454 F.

Supp. 3d 1049, 1050 (W.D. Wash. 2020) (finding a sentencing discrepancy of fifteen years "extraordinary and compelling"); *United States v. Ngo*, No. 97-cr-3397, 2021 WL 778660, at *4 (S.D. Cal. Mar. 1, 2021) (writing that a prison term of fifteen years longer than defendant would face if sentenced today constitutes "an extraordinary and compelling" reason for sentence reduction, particularly when combined with evidence of defendant's rehabilitation); *United States v. Jones*, 482 F. Supp. 3d at 979 (noting fifteen-year disparity between defendant's sentence and sentence that would have likely been imposed today); *United States v. Quinn*, 467 F. Supp. 3d 824, 828 (N.D. Cal. 2020) (finding that it would be unnecessarily cruel and unproductive for defendant to remain in prison when thirty-year disparity existed between sentence imposed and sentence that Congress would now impose). "That disparity is primarily the result of Congress' conclusion that sentences like [Defendant's] are unfair and unnecessary, in effect, a legislative rejection of the need to impose sentences under § 924(c), as originally enacted, as well as a legislative declaration of what level of punishment is adequate." *United States v. Redd*, 444 F. Supp. 3d 717, 723 (E.D. Va. 2020).  In *Chen*, the Ninth Circuit concluded that non-retroactive changes in sentencing law should be considered "in combination with other factors particular to the individual defendant[] when analyzing extraordinary and compelling reason." *Chen*, 48 F.4th at 1098.  Accordingly, the Court finds that the sentencing disparity in this case, while not dispositive, weighs strongly in favor of finding that extraordinary and compelling reasons warrant a sentence reduction.

        **2.**        **COVID-19**

Defendant argues that the COVID-19 pandemic provides an "extraordinary and compelling reason" for a sentence reduction and compassionate release because he is an alcoholic, blind, epileptic, asthmatic, and a former smoker. (RMCR 17:10–19-7); (MSR 14:10–16:7).  Defendant's medical records confirm that he suffers from blindness in both eyes,

///

epilepsy, and a moderate alcohol disorder. (Medical Records, Ex. 4 to Mot. Compassionate Release ("MCR"), ECF No. 3522-4).

Extraordinary and compelling reasons for compassionate release may exist when a defendant demonstrates he is suffering from a severe medical condition. *See* U.S.S.G. § 1B1.13. When considering "extraordinary and compelling reasons" for release based on a medical condition in light of the COVID-19 pandemic, "courts have looked to the safety of the defendant's current detention institution compared to release, as well as whether the defendant's medical conditions elevate the risk of severe illness from COVID-19." *United States v. Burrow*, No. 19-cr-00295, 2022 WL 2307155, at *2 (D. Nev. June 27, 2022); *see, e.g.*, *United States v. Kauwe*, 467 F. Supp. 3d 940, 942–43 (D. Nev. 2022); *United States v. Walters*, No. 2:16-cr-00011, 2020 WL 3104049, at *2 (D. Nev. June 11, 2020). The Court will begin by examining whether Defendant's medical conditions elevate his risk of severe illness from COVID-19.

### a. *Defendant's Medical Conditions*

As stated, Defendant argues that he faces a heightened risk of COVID-19 health complications because he is an alcoholic, blind, epileptic, asthmatic, and a former smoker. (RMCR 17:10–19-7); (MSR 14:10–16:7). Current CDC guidelines do not designate blindness[4] or epilepsy as COVID-19 risk factors. *See* CDC, "Coronavirus Disease 2019 (COVID-19):

---

[4] Blindness does not place an individual at a heightened risk of COVID-19 complications. *See United States v. Silva*, No. 4:17-cr-554, 2020 WL 4039218, at *3 (N.D. Cal. July 17, 2020) ("[V]ision impairment is not a risk factor that would render Silva more susceptible to severe complications from COVID-19."); *United States v. Kuresa*, No. 16-00744, 2022 WL 4329966 (D. Haw. Sept. 19, 2022) (same). The Court acknowledges, however, that blindness can exacerbate an individual's risk of being infected with COVID-19 because he or she cannot completely social distance due to relying on others' assistance to maneuver around the prison and complete basic tasks. Here, however, this risk is mitigated by USP Coleman II assigning defendant a "full-time companion" to assist him in safely ambulating around the complex. (*See* Resp. to Inmate Request, Ex. 2 to Mot. Comp. Rel., ECF No. 3522-2). To the extent that Defendant argues that his blindness is a serious physical condition that diminishes his ability to provide self-care in a prison context, the Court similarly finds that the presence of a full-time companion is an adequate remedy. Therefore, the Court is not convinced that Defendant is unable to remain safe in a correctional setting or that USP Coleman II is unable to manage the COVID-19 risks to Defendant.

People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, (last updated Oct. 29, 2022).  But the CDC website does identify that asthma, a history of smoking, and substance abuse disorders such as alcoholism "can make you more likely to get very sick from COVID-19."[5] *Id.*  Accordingly, Defendant's alleged health conditions are not insignificant.  The question, however, is whether Defendant's health conditions rise to the rare and extraordinary level sufficient to warrant a sentence reduction and compassionate release.  To make this determination, the Court will now turn to the conditions at USP Coleman II.

### b. Conditions at USP Coleman II

Defendant emphasizes that the BOP has failed to protect inmates at USP Coleman II from the COVID-19 pandemic. (RMCR 18:2–19:20).  Defendant's Reply in support of his Renewed Motion for Compassionate Release, at the time of its filing on September 23, 2022, stated that USP Coleman II had "11 active COVID-19 cases, and has recorded two inmate deaths along with a huge number of prior cases." (Reply RMCR 3:6–9).

Compassionate release motions based upon the risk of contracting COVID-19 are now routinely denied where the inmate has access to the COVID-19 vaccine. *See, e.g.*, *Burrow*, 2022 WL 2037155, at *2; *United States v. Bondarenko*, No. 2:17-cr-00306, 2022 WL 16701934, at *3 (D. Nev. Nov. 3, 2022); *United States v. Thompson*, No. 2:16-cr-00230, 2021 WL 2324498, at *2 (D. Nev. June 7, 2021); *United States v. Young*, No. 3:08-cr-00120, 2021WL 4899159, at *2 (D. Nev. Oct. 20, 2021).  Here, it is unclear whether Defendant has been vaccinated.  In Defendant's filing on April 5, 2021, he noted that he had not been vaccinated. (Reply MCR 11:18, ECF No. 3536).  The Government corroborated Defendant's

---

[5] It also bears noting that Defendant is fifty-seven years old.  Defendant's age is identified by the CDC as that of an "older adult," which may increase the risk of severe illness of COVID-19. *See* CDC, "Coronavirus Disease 2019: COVID-19 Risks and Vaccine Information for Older Adults," https://www.cdc.gov/aging/covid19/covid19-older-adults.html, (last visited November 22, 2022).

statement, observing that "there [was] no evidence" that Defendant had received or been offered the vaccine. (Gov.'s Resp. MCR 14:10–11).  The parties' subsequent filings fail to mention Defendant's vaccination status, including whether he was offered the vaccine.  In Defendant's most recent filings, he did not maintain that he does not have access to the vaccine. (*See* generally RMCR); (Reply RMCR).  Moreover, the BOP website shows that the vaccine has been disseminated at the federal correction complex where Defendant is housed.

Specifically, the BOP reports that Federal Correctional Complex, Coleman ("FCC Coleman"),[6] which includes USP Coleman II where Defendant is housed, has vaccinated 757 staff members and 5,454 inmates. *See* BOP, "COVID-10 Vaccine Implementation," https://www.bop.gov/coronavirus/, (last visited November 22, 2022).  Thus, the proliferation of the vaccine at the facility Defendant resides weakens his assertion that he faces a substantial and unavoidable risk of infection. *See United States v. Bright*, No. 17-cr-0270, 2022 WL 16951832, at *4 (S.D. Cal. Nov. 15, 2022) ("[T]he low rates of transmission and widespread vaccine access suggest that prison conditions in USP Coleman II, in conjunction with Defendant's condition, do not rise to the level of an extraordinary and extraordinary circumstance."); *United States v. Iglesias*, No. 16-cr-00131, 2021 WL 633312, at *3 (S.D. Cal. Feb. 18, 2021) (observing that the "COVID-19 vaccine is in the process of being distributed to BOP inmates" thereby weakening the defendant's argument); *United States v. Duran*, No. 21-cr-233, 2022 WL 2819137, at *3 (E.D. Penn. July 19, 2022) ("The proliferation of vaccines throughout the Bureau of Prisons means compassionate release motions based on COVID-19 'generally lack merit.'" (citation omitted)).

---

[6] FCC Coleman consist of four facilities: Federal Correctional Institution, Coleman Low ("FCI Coleman Low"), Federal Correctional Institution, Coleman Medium ("FCI Coleman Medium"), United States Penitentiary I, Coleman ("USP Coleman I"), and United States Penitentiary II, Coleman ("USP Coleman II").  *See* BOP, "Other Facilities at the Coleman Federal Correctional Complex," https://www.bop.gov/locations/institutions/clp/ (last visited November 23, 2022).

The conditions at USP Coleman II further militate against a finding that extraordinary and compelling reasons exist. In contrast to when Defendant's Motion was filed, BOP reports that USP Coleman II has zero active COVID-19 among inmates and four active cases among staff. *See* BOP, "COVID-19 Cases," https://www.bop.gov/coronavirus/, (last visited November 22, 2022). The "low rates of transmission and widespread vaccine access suggest that prison conditions in [USP Coleman II], in conjunction with Defendant's condition, do not rise to the level of an extraordinary and extraordinary circumstance." *United States v. Bright*, No. 17-cr-0270, 2022 WL 16951832, at *4 (S.D. Cal. Nov. 15, 2022); *see, e.g.*, *United States v. Oliver*, No. 21-50170, 2022 WL 4285598, at *2 (9th Cir. 2022) (affirming district court decision's denial, which reasoned that "COVID-19 was not widespread in Oliver's facility at the time and that the proliferation of the vaccine was expected to reduce the spread of the virus"). Accordingly, the widespread availability of vaccinations and low infection rates at UPS Coleman II outweigh any heightened risk of COVID-19 complications posed by Defendant's medical conditions.

Although Defendant's health complications are insufficient to constitute extraordinary and compelling reasons standing alone, the Court nonetheless finds that when considered with the sentencing disparity created by the passage of the FSA, extraordinary and compelling reasons exist warranting a sentence reduction.[7] *See Chen*, 48 F.4th at 1098 (advising that district courts "may consider non-retroactive changes in sentencing law, in combination with other factors particular to the individual defendant" in analyzing whether extraordinary and compelling purposes exist).

---

[7] Further, prior to reducing a sentence, U.S.S.G. § 1B1.13 directs courts to determine whether the defendant is a danger to the safety of any other person in the community. *Id.* Having considered Defendant's medical conditions and criminal history, the Court finds that Defendant does not pose a danger to the community such that a sentence reduction is not warranted. This finding is not the same for the compassionate immediate release analysis.

In contrast, because Defendant's Renewed Motion for Compassionate Release seeks a qualitatively different remedy than his Motion for Sentence Reduction, the Court finds that the sentencing disparity created by passage of the FSA does not feature as prominently into the Court's determination.  Therefore, the Court finds that Defendant's medical conditions do not constitute present extraordinary and compelling reasons warranting compassionate relief.  Even if Defendant had presented extraordinary and compelling reasons for compassionate release, however, this Court would still decline to grant it because the § 3553(a) factors weigh against Defendant's entitlement to such relief.

### B.  Section 3553(a) Sentencing Factors

Defendant contends that the § 3553(a) factors militate granting a sentence reduction and compassionate release. (RMCR 12:26–15:10).  Specifically, Defendant maintains he poses no danger to the community due to his medical conditions;[8] his criminal history does not warrant what is effectively a life sentence; the length of his sentence creates a sentencing disparity when compared to his co-defendants; and reducing his sentence will not encourage criminal conduct. (*Id.*).  As stated, the Court agrees with Defendant that a sentence reduction is warranted, primarily in light of the sentencing disparity created by the FSA's passage; the Court disagrees, however, that he is entitled to compassionate release under the § 3553(a) based on the seriousness of his offense and the limited time served for his dangerous conduct even when considering his reduced sentence.

The Court must consider the factors set forth in Section 3553(a) to the extent they are applicable.  These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established in the

---

[8] As stated in a prior footnote, the Court agrees with Defendant that he does not pose a danger to the community for purposes of a sentence reduction.

Sentencing Guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims. *See* 18 U.S.C. § 3553(a)(1)–(7).

As to the nature and circumstances of Defendant's offense, Defendant traveled from Arizona to Nevada with numerous weapons to participate in an armed demonstration against federal officers. (Gov.'s Resp. MSR 4:6–11). Defendant made comments, both before and after the demonstration, expressing an eagerness to harm law enforcement officers. (*Id.* 4:11–7:9). Defendant maintains his conviction should not be characterized as "violent criminal conduct" because "nobody was injured." (Reply RMCR 3:10–16, 4:9–11). Even if the Court was receptive to this argument, Defendant's assertion downplays the significance and severity of his offense. Defendant traveled to Nevada with weapons, invoking Valhalla martyrdom, to confront and potentially injure, or worse kill, federal officers. *See United States v. Woodberry*, No. 2:18-cr-00049, 2022 WL 1803334, (W.D. Wash. June 1, 2022) (observing that the defendant's conduct "was extremely serious" where the defendant committed an armed robbery because the circumstances were "fraught with opportunity for the firearms to be discharged, and included the risk of causing death"); *United States v. Lewis*, No. 2:13-cr-00149, 2021 WL 298757, at *2 (D. Nev. Jan. 28, 2021) (disagreeing with the defendant's argument that the severity of his crime was not as serious where "not shots were fired when he robbed the bank" because the robbery remained a "crime of violence"). Therefore, the seriousness of Defendant's offense weighs against granting the relief he requests.

The Court further finds that two other sentencing factors—the need for the sentence imposed and the sentencing guidelines—do not encourage compassionate release. The seriousness of Defendant's offense, as set forth above, warrants him serving the remainder of his sentence. Moreover, even when Defendant's sentence is reduced due to unstacking his §

924(c) charges, he received a 387 months (thirty-two years) term of imprisonment. Defendant has served a mere six years and eight months (eighty months) in custody. Thus, Defendant has only served approximately 21% of his *reduced* sentence. Retribution is a valid and important consideration when evaluating the need for the sentence imposed. *See Tapia v. United States*, 564 U.S. 319, 325 (2011) (identifying retribution, deterrence, rehabilitation, and incapacitation as sentencing considerations). In this case, just punishment indicates that Defendant should remain incarcerated because he has served such a limited amount of his sentence. *See, e.g.*, *United States v. Rand*, No.3:16-cr-00029-MMD-WGC-1, 2020 WL 2733949, at *4–5 (D. Nev. May 26, 2020) ("Just punishment requires that Defendant remain at [the correctional facility] particularly given that he has more than half his sentence remaining"). The Court concludes that, given the nature and seriousness of the offense, compassionate release "would not serve the need for the sentence to reflect the seriousness of the offense, [] promote respect for the law, [] provide just punishment for the offense, [or] afford adequate deterrence to criminal conduct . . . ." *United States v. Silva*, No. 4:17-CR-554, 2020 WL 4039218, at *3 (N.D. Cal. July 17, 2020). Reducing Defendant's sentence, however, still sufficiently reflects the magnitude of Defendant's crime and seriousness of the offense, while promoting respect for the law and providing just punishment.

Defendant also contends that compassionate release is necessary to prevent sentencing disparities when compared to the sentences served by his co-defendants. (RMCR 14:13–26). However, Defendant has not shown that these differences are unwarranted. Any sentencing disparity between Defendant and his co-defendants is a consequence of bargained-for plea agreements and prosecutorial misconduct that this Court previously determined did not entitle this Defendant to a new trial. (Order 5:7–12:6); *see United States v. Hunter*, 12 F.4th 555, 572 (6th Cir. 2021) ("There is nothing 'extraordinary' or 'compelling' about a sentence disparity that results from a co-defendant's decision to plead guilty and assist the government.").

Moreover, because Defendant has not served the majority of his sentence, granting his Motion for Compassionate Release would conversely create a disparity between him and similarly situated defendants. *See United States v. Godwin*, No. 17-1620-001, 2022 WL 3027999, at *3 (D. Ariz. Aug. 1, 2022) ("Even if Godwin had served more than fifty percent of his sentence, . . . early release would still not be appropriate based on the sentencing disparities an early release would create."); *United States v. Hedgecoth*, No. 20-cr-2032, 2022 WL 5265147, at *2 (S.D. Cal. Oct. 6, 2022) (finding that releasing the defendant after he had served approximately 26 months of his 68-month custodial sentence would create unwarranted sentencing disparities). Therefore, the Court does not believe that his continued incarceration under his reduced sentence creates any unwarranted sentencing disparities.

Based on the foregoing, the Court finds that "extraordinary and compelling reasons warrant" reducing Defendant's sentence. 18 U.S.C. § 3582(c)(1)(A)(i). The Court accordingly **GRANTS** Defendant's Motion for Sentence Reduction and reduces his sentence of incarceration to 387 months (thirty-two years imprisonment). In contrast, the Court finds that Defendant has failed to present "extraordinary and compelling reasons" warranting compassionate release, in addition to the § 3553(a) factors weighing against such a finding. Accordingly, the Court **DENIES** Defendant's Renewed Motion for Compassionate Release.

///
///
///
///
///
///
///
///

IV. **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendant's Motion for Sentence Reduction, (ECF No. 3541), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Renewed Motion for Compassionate Release, (ECF No. 3570), is **DENIED**.

**DATED** this 29 day of November, 2022.

Gloria M. Navarro, District Judge
United States District Court